IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 19-0885

_____

**FILED**
**March 20, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

OFFICE OF DISCIPLINARY COUNSEL,
Petitioner

v.

E. LAVOYD MORGAN, JR.,
A MEMBER OF THE WEST VIRGINIA STATE BAR,
Respondent

_____

Extraordinary Petition for Immediate Suspension

PETITION GRANTED, IMMEDIATE SUSPENSION ORDERED,
TRUSTEE TO BE APPOINTED
_____

Submitted: February 18, 2020
Filed: March 20, 2020

Rachael L. Fletcher Cipoletti, Esq.
Chief Lawyer Disciplinary Counsel
Jessica H. Donahue Rhodes, Esq.
Lawyer Disciplinary Counsel
Charleston, West Virginia
Counsel for Petitioner

Lonnie C. Simmons, Esq.
DiPiero Simmons McGinley &
    Bastress, PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS**

1. "Under the authority of the Supreme Court of Appeal's inherent power to supervise, regulate and control the practice of law in this State, the Supreme Court of Appeals may suspend the license of a lawyer or may order such other actions as it deems appropriate, after providing the lawyer with notice and an opportunity to be heard, when there is evidence that a lawyer (1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) poses a substantial threat of irreparable harm to the public until the underlying disciplinary proceeding has been resolved." Syl. Pt. 2, *Committee on Legal Ethics v. Ikner*, 190 W.Va. 433, 438 S.E.2d 613 (1993).

2. "The special procedures outlined in Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure should only be utilized in the most extreme cases of lawyer misconduct." Syl. Pt. 1, *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995).

3. "Given the practical difficulty of providing specific guidance on the instances where temporary suspension is appropriate, the Court will apply the two-part standard in West Virginia Rule of Lawyer Disciplinary Procedure 3.27 to each petition on a case-by-case basis." Syl. Pt. 4, *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995).

4. "If the Court, after proceeding in accordance with West Virginia Rule of Lawyer Disciplinary Procedure 3.27(c), concludes that the respondent lawyer should be temporarily suspended, it will so order. The Office of Disciplinary Counsel, however, must then expedite the resolution of the charges against the respondent and move to conclude the matter within ninety days after the suspension becomes effective." Syl. Pt. 3, *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995).

**HUTCHISON, Justice:**

The Office of Disciplinary Counsel ("ODC") files this petition for the immediate, interim suspension of the respondent E. Lavoyd Morgan from the practice of law in West Virginia pursuant to Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure ("RLDP"). The ODC seeks this suspension pending the outcome of a twenty-two count Statement of Charges against the respondent that is currently being considered by a Hearing Panel Subcommittee of the Lawyer Disciplinary Board. If this petition is granted, the ODC also requests the appointment of a trustee to ensure that the respondent's clients are protected.

Having reviewed this matter, we find sufficient evidence to initially demonstrate that the respondent has violated the West Virginia Rules of Professional Conduct ("RPC" or "Rules") and poses a substantial threat of irreparable harm to the public. Accordingly, we grant the ODC's petition for interim suspension, effective immediately. We also order the Hearing Panel Subcommittee to expedite this matter by filing its report no later than sixty days from the date of this opinion, and we order the Chief Judge of the Circuit Court of Greenbrier County to appoint a lawyer to serve as trustee for the respondent's law practice.

1

## I. Facts and Procedural Background

The respondent is a member of the West Virginia State Bar who maintains his law office in Lewisburg, Greenbrier County, West Virginia. He was admitted to the Bar in October 1995. As such, he is subject to the disciplinary jurisdiction of this Court.

In support of this petition for immediate suspension, the ODC provided this Court with two exhibits: the formal Statement of Charges that the Investigative Panel of the Lawyer Disciplinary Board filed against the respondent on September 30, 2019,[1] and a copy of a bank statement for the respondent's client trust account. When issuing the Statement of Charges, the Investigative Panel found probable cause to believe that the respondent has committed 134 instances of violating nineteen different Rules and that formal discipline is appropriate.[2] The alleged violations include, *inter alia*, repeated instances of mishandling clients' cases, dishonesty, and the misappropriation of client funds. The bank statement shows that the respondent's client trust account had a negative balance in July 2017.

---

[1] The Statement of Charges has been assigned Supreme Court docket number 19-0879.

[2] *See* RLDP 2.9(d) (directing Investigative Panel to issue formal charges upon determining that probable cause exists to establish violations of RPC and formal discipline is appropriate).

The respondent objects to this petition and denies that immediate suspension is appropriate. He provided this Court with a copy of his Answer to the Statement of Charges; a portion of the transcript of a sworn statement he gave to the ODC; an affidavit signed by his ex-wife, who formerly was his office manager; and a copy of a police report that he filed in January 2018 reporting two employees for allegedly embezzling from his law firm. The Answer to the Statement of Charges contains a lengthy narrative describing the respondent's law practice and seeking to refute the charges. The respondent argues that a combination of circumstances out of his control, including his medical problems and a dishonest paralegal who embezzled from the firm, generated the multiple ethics complaints against him.

The twenty-two counts set forth in the Statement of Charges, along with the respondent's response to each count, are summarized as follows.

**Count 1.** The respondent's practice includes court-appointed work representing indigent criminal defendants. The Statement of Charges alleges that his payment vouchers in 2016 and 2017, which were submitted to both the presiding circuit courts and to the West Virginia Public Defender Services, were replete with false information, errors, and instances of overbilling. On at least thirty-four separate dates, the respondent reported billable hours of over eighteen hours per day—and on some of those dates, he reported over twenty-two hours in a day. The Statement of Charges asserts that on at least one date, he claimed an impossible 28.8 billable hours in a single day. West

3

Virginia Code § 29-21-13a requires an appointed lawyer to maintain accurate records of time and expenses incurred; specifies different rates of reimbursement for lawyers and paralegals; and only permits compensation for actual time and expenses. The respondent is accused of failing to keep accurate records, billing for work that he did not perform, billing paralegal time as attorney time, billing in violation of state statute, failing to ensure that his staff's conduct was compatible with his ethical obligations, and making false statements about the work he performed. For this alleged conduct, he is charged with violating Rules 1.5(a), 3.3(a)(1), 8.1(a), 8.4(c) and 8.4(d) of the RPC.[3] In his Answer, the respondent argues that only the circuit court who appoints a lawyer to a case has the authority to challenge the amounts claimed in a PDS payment voucher, and the Lawyer Disciplinary Board is attempting to usurp the circuit courts' authority by bringing these charges. Furthermore, although he does not address the specific instances of alleged overbilling, the respondent denies committing any unethical acts.

**Count 2.** Travis Norwood retained the respondent for criminal cases; Mr. Norwood and/or his mother paid the respondent an $8,000 retainer in May of 2017. According to the Statement of Charges, the respondent did not obtain a written fee agreement from his client, did not properly handle the cases, provided false information to the client, and when the client terminated the attorney-client relationship the respondent

---

[3] For the convenience of the reader, an Appendix at the end of this opinion recites all of the Rules of Professional Conduct that the respondent is charged with violating.

4

failed to provide the client file or refund the unearned portion of the retainer. The Statement of Charges further alleges that a former employee of the firm has reported that the respondent falsified the invoice for his work on this case; moreover, the respondent's client trust account does not show a deposit of $8,000 and two months later the trust account had a negative balance. The ODC has reported that the respondent did not timely respond to this ethics complaint. For this Count, the respondent is charged with violating Rules 1.5(b), 1.15(a), 1.15(c), 1.16(d), 8.1(a), 8.1(b), 8.4(c) and 8.4(d) of the RPC. In his Answer, the respondent says that he plans to pay back $6,000 of the retainer. The respondent says that he tried to send a refund of $135 directly to Mr. Norwood in prison, but the prison returned the check because inmates are not permitted to receive money in this fashion.

**Count 3.** Lori McKinney hired respondent to represent her husband in a criminal case. She alleges that the respondent failed to communicate with them and failed to properly handle the case. She also sought the respondent's representation in a medical malpractice case, which the respondent allegedly did not pursue and never told the client that he was not going to pursue. The respondent is charged with failing to act diligently, failing to expedite both cases, failing to communicate with his clients about both cases, failing to keep records of the funds paid to him, and failing to provide the client file. He is accused of violating Rules 1.3, 1.4(b), 1.15(a), 1.16(d), 3.2, 8.4(c) and 8.4(d) of the RPC. In his Answer, the respondent denies ever agreeing to represent the McKinneys in a medical malpractice case. He also explains that he is unable to locate any of the McKinneys' files, and without the criminal file he is unable to provide them with an

5

accounting. He also denies an allegation that his employee was the only person to have met with the McKinneys. While he denies violating the RPC, the narrative in his Answer does not specifically address the other allegations of wrongdoing.

**Count 4**. The Statement of Charges asserts that in June 2017, W.T. paid the respondent a $3,500 retainer to represent her granddaughter in a family law case. According to the Statement of Charges, it is unclear whether the respondent deposited this money in his client trust account, but at the end of the next month the trust account had a negative balance. It is alleged that the granddaughter only saw the respondent at the initial consultation and two hearings, he did no other work and would not meet with her, and he would not provide the client file or a refund when he stopped working on the case. Moreover, the ODC directed the respondent to provide an itemization of how he spent the retainer, which he failed to provide, and certified letters from the ODC regarding this matter went unclaimed. The respondent is charged with misappropriating client funds, failing to have a written fee agreement, failing to hold unearned fees in a trust account, failing to keep accurate trust account records, failing to provide the client file and refund, and failing to respond to disciplinary counsel. The Statement of Charges asserts that his conduct violated Rules 1.5(b), 1.15(a), 1.15(c), 1.16(d), 8.1(b), 8.4(c), and 8.4(d) of the RPC. In his Answer, the respondent reports that this client was happy with the representation, and he has been unable to find the records necessary to provide an itemization of how he spent her retainer. In a general manner, he denies the remaining allegations and denies violating the Rules.

6

**Count 5.** This Count arises from an ethics complaint filed by the respondent's former employee, Denny Bostic; the ODC also interviewed other former employees in the course of the investigation. The Statement of Charges asserts that the respondent withheld money from his employees' earned wages to pay Social Security taxes and health insurance premiums, but then failed to remit this money to the appropriate agencies and, instead, kept the money for himself. Furthermore, the employees' paychecks "bounced" and the respondent failed to pay state and federal taxes as well as Workers' Compensation premiums. According to the Statement of Charges, various former employees have reported that the respondent failed to deposit client money in his trust account; he took a $2,500 cash retainer from a client and then denied that the client had paid; he operated a "shadow office" in Charleston but refused to pay the city's user fee; and he operated under the misleading firm name of "E. Lavoyd Morgan and Associates" even though he is a solo practitioner. The respondent is accused of violating Rules 1.15(a), 1.15(c), 7.5(a), 8.1(b), 8.4(b), and 8.4(d) of the RPC. In his Answer, the respondent denies the allegations and asserts that Mr. Bostic, a convicted person, has made a concerted effort to "get back at" the respondent.

**Count 6.** E.L. hired the respondent's law firm to handle a divorce case, paying $3,500 to respondent's paralegal Mitchell Coles. E.L. complains that she was unable to communicate with Mr. Coles or the respondent; the respondent's office was closed; and the respondent failed to provide her client file or a refund of unearned fees. Moreover, according to the Statement of Charges, the retainer was not deposited into the

7

firm's client trust account, which soon thereafter had a negative balance. According to the Statement of Charges, the respondent was late in responding to the ethics complaint, but eventually answered by saying that he recalls filing a divorce petition for E.L., but he cannot find the file and has never provided an accounting or a refund of unearned fees. He is accused of violating Rules 1.4(a), 1.15(a), 1.15(d), 1.16(d), and 8.1(b) of the RPC. In his Answer, the respondent explains that he remembers filing a divorce petition for this client, but he has been unable to locate the file due to the actions of a corrupt former paralegal.

**Count 7.** According to the Statement of Charges, Todd Clutter hired the respondent to represent Mr. Clutter and his wife on four matters, paying a $9,000 retainer in multiple payments made in January through March 2018. During this time period, the respondent's client trust account showed a balance of only $188.06. According to the Statement of Charges, the respondent failed to appear at two hearings, resulting in adverse consequences to the clients; failed to respond to the clients' requests for information and to keep them reasonably informed about the cases; failed to keep the unearned portion of the retainer in his client trust account, while also commingling firm money in the trust account; failed to provide the clients with their file; failed to refund the unearned portion of their retainer; and failed to timely answer the ethics complaint. He is accused of violating Rules 1.4(a), 1.4(b), 1.15(a), 1.15(c), 1.16(d), and 8.1(b) of the RPC. In his Answer, the respondent explains that Mr. Clutter's repeated attempts to contact him were made while the respondent was out of the office recuperating from a serious medical condition and

8

surgery. Without specifically discussing the remaining allegations, the respondent denies the same.

**Count 8.** Lonnie Dennis Lilly hired respondent for a car accident case, but alleges that the respondent failed to communicate with him and the respondent's office was often closed. According to the Statement of Charges, there was no written contingency fee agreement; a retainer for expenses was not deposited into the firm's client trust account; the respondent failed to keep accurate records of the client's money; the respondent failed to respond to his client's requests for information and otherwise failed to communicate with his client; the respondent failed to pursue the case competently and diligently; and the respondent failed to timely respond to the ethics complaint. He is accused of violating Rules 1.1, 1.3, 1.4(a), 1.4(b), 1.5(b), 1.15(a), 1.15(c), and 8.1(b) of the RPC. In his Answer, the respondent says that Mr. Lilly's unsuccessful efforts to contact him were because the respondent was out of the office recuperating from his medical issues and surgery. He denies any unethical conduct.

**Count 9.** Dani Jones and her son Andrew Arrick report speaking with the respondent's paralegal, Mr. Coles, who said the respondent would take their case. According to the Statement of Charges, the respondent did not show up for appointments and failed to communicate with these clients. The respondent has denied knowing who these clients are. He is charged with not acting competently and diligently in handling their case; failing to properly communicate with his clients; failing to ensure that his staff's

9

conduct is compatible with his ethical obligations; and failing to timely respond to the ethics complaint. He is accused of violating Rules 1.1, 1.3, 1.4(a), 1.4(b), 5.3, and 8.1(b) of the RPC. In his Answer, the respondent acknowledges that he cannot find a client file and does not know these purported clients. The respondent asserts that his former paralegal, Mr. Coles, accepted some cases and retainers without the respondent's knowledge and then stole the retainers. The respondent denies that he acted unethically in this matter.

**Count 10.** Client R.D. filed an ethics complaint reporting that after she hired the respondent for a divorce case, he did little work on the case and failed to communicate with her. According to the Statement of Charges, R.D. gave the respondent a $3,000 retainer that was not deposited into his client trust account, and shortly thereafter the trust account had a negative balance. The respondent is charged with failing to act competently and diligently in handling the case, failing to communicate with his client, failing to hold client funds in a trust account, making false statements during the ethics investigation, and failing to timely respond to the ethics complaint. He is accused of violating Rules 1.1, 1.3, 1.4(a), 1.4(b), 1.15(a), 1.15(c), 8.1(a), and 8.1(b) of the RPC. In his Answer, the respondent explains that he is unable to find R.D.'s file, but he denies acting unethically in this matter.

**Count 11.** According to the Statement of Charges, T.R. hired the respondent for a divorce case, paying a $4,150 retainer. The respondent filed a petition for divorce and a motion for temporary relief on her behalf, but a hearing on the motion was cancelled and never rescheduled; the respondent failed to file mandatory financial disclosures; nothing

10

else happened in the case; and T.R. was unable to contact him. T.R. reported that the respondent and his paralegal Mr. Coles essentially disappeared, the respondent's office telephone line was disconnected, his office was closed, and she never received an itemized statement, her file, or a refund. The Statement of Charges alleges that none of T.R.'s retainer was deposited into the firm's client trust account, but some of the money was deposited into a firm operating account. The respondent is charged with failing to act competently and diligently on the case; failing to hold client funds in a trust account; failing to provide the client with her file and a refund of unearned fees; failing to ensure that his staff's conduct was compatible with his ethical obligations; making false statements during the ethics investigation; and failing to timely respond to the ethics complaint. He is accused of violating Rules 1.1, 1.3, 1.15(a), 1.15(c), 1.16(d), 5.3, 8.1(a), and 8.1(b) of the RPC. In his Answer, the respondent explains that T.R.'s difficulties in reaching him were during his period of recuperation. He notes that she has now retained other counsel, and he denies acting unethically in this matter.

**Count 12.** According to the Statement of Charges, D.K. hired the respondent to handle her divorce case, paying a $3,050 retainer. D.K. complains that the case was primarily handled by the respondent's paralegal, Mr. Coles, and she was often unable to get in touch with the respondent. She reports that during a hearing, all the respondent asked her was how much she would accept to settle the case. D.K. reports that after a bifurcated divorce order was entered, she attempted to contact the respondent for six months but his office was closed. The respondent is charged with failing to handle the case in a competent

11

and diligent manner, failing to adequately communicate with his client, being unable to locate the client's file, not holding the unearned portion of the retainer in his client trust account, not having an accounting of how he spent the retainer, not refunding unearned fees when he stopped working on the case, failing to ensure his staff's conduct was compatible with his ethical duties, making false statements during the ethics investigation, and failing to timely respond to the ethics complaint. He is accused of violating Rules 1.1, 1.3, 1.4(a), 1.4(b), 1.15(a), 1.15(c), 5.3, 8.1(a), and 8.1(b) of the RPC. In his Answer, the respondent reports that some of D.K.'s attempts to reach him were during his period of recuperation. The respondent cannot find her client file and does not remember meeting her. He denies acting unethically in this matter.

**Count 13.** Hunter Chellis filed an ethics complaint explaining that she hired the respondent for a car accident case, but was then unable to get in contact with him for several months. After she filed the ethics complaint with the ODC, the respondent successfully settled her case. The respondent is charged with failing to act diligently on the case, failing to communicate with his client, failing to have a written fee agreement, and failing to timely respond to the ethics complaint, in violation of Rules 1.3, 1.4(a), 1.4(b), 1.5(b), and 8.1(b) of the RPC. In his Answer, the respondent says that some of Ms. Chellis's unsuccessful attempts to reach him were when he was working outside of his office due to health reasons, he successfully represented her, and he did not act unethically.

**Count 14.** Sara Reynolds filed an ethics complaint explaining that she hired the respondent for a car accident case, but was then unable to get in contact with him for several months. After she filed the ethics complaint with the ODC, the respondent successfully settled her case. The respondent is charged with failing to communicate with his client and failing to timely respond to the ethics complaint, in violation of Rules 1.4(a), 1.4(b), and 8.1(b) of the RPC. In his Answer, the respondent says that it is apparent Ms. Reynolds attempted to contact him when he was recuperating from his surgery, he successfully represented her, and he did not act unethically.

**Count 15.** Theresa Reynolds filed an ethics complaint explaining that she hired the respondent for a car accident case, but was then unable to get in contact with him and he failed to move the case along for approximately two years. After she filed the ethics complaint with the ODC, the respondent successfully settled her case. According to the Statement of Charges, the respondent deposited the settlement check in his client trust account, but when he wrote a check to Ms. Reynolds for her share of the settlement proceeds it caused his client trust account to have a negative balance. The respondent is charged with failing to act diligently, failing to communicate with his client, failing to hold third party funds in a trust account, failing to timely respond to the ethics complaint, and misappropriating funds belonging to a client or third party. He is accused of violating Rules 1.3, 1.4(a), 1.4(b), 1.15(a), 8.1(b), 8.4(c), and 8.4(d) of the RPC. In his Answer, the respondent says that Ms. Reynolds apparently attempted to contact him while he was

13

recuperating from his surgery, he successfully represented her, and he did not act unethically.

**Count 16.** Crystal Sheppard filed an ethics complaint explaining that she hired the respondent for a car accident case, but she was unable to get in touch with him and he failed to prepare a demand letter on her behalf for over a year. Ms. Sheppard reports that she terminated the representation, but the respondent did not return her file and she has been unable to hire new counsel. The respondent is charged with failing to act diligently, failing to communicate with his client, failing to provide the client file, failing to provide a refund of unearned fees/expenses, and failing to timely respond to the ethics complaint. He is charged with violating Rules 1.3, 1.4(a), 1.4(b), 1.16(d), and 8.1(b) of the RPC. In his Answer, the respondent says that it appears Ms. Sheppard attempted to contact him when he was unable to work. He reports finding her file in a box of files discovered to be in the possession of his former paralegal Mr. Coles, and he offers to proceed with the case. The respondent denies any unethical conduct.

**Count 17.** J.H. hired the respondent in a family law matter, but had complaints about his inability to communicate with the respondent. According to the Statement of Charges, J.H. paid the respondent's office $4,000 over a two year period, but there is no record of the money being deposited into the client trust account, and the client trust account had a negative balance during that time period. The respondent is charged with failing to act competently and diligently on the case; failing to communicate with the

client; failing to hold client funds in a trust account; failing to keep complete records of funds paid to him; failing to deposit client money in a trust account; commingling law firm money with client money; and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. He is charged with violating Rules 1.1, 1.3, 1.4(a), 1.4(b), 1.15(a), 1.15(c), and 8.4(c) of the RPC. In his Answer, the respondent says that J.H. is dissatisfied that the facts and law would not provide the outcome J.H. desired for his case. The respondent denies any unethical behavior.

**Count 18.** Complainant Elizabeth Good was the respondent's secretary. She reports that she quit her employment when the respondent failed to pay $2,342 in wages he owed her. She also reports that the respondent instructed her to not record or deposit payments that clients made by cash or check, and that the respondent would instead take the cash or check and put it in his pocket. The respondent is charged with failing to timely respond to this ethics complaint in violation of Rule 8.1(b), and failing to timely pay wages in violation of the law and Rule 8.4(b) of the RPC. In his Answer, the respondent acknowledges that Ms. Good is most likely owed money for wages, but he says that she knew at the time of her employment that cash flow would be an issue. He denies ever advising Ms. Good to refrain from receipting payments from clients or depositing such money into the client trust account.

**Count 19.** According to the Statement of Charges, Kelsea Hower and her mother Lisa Stansell hired the respondent in November 2013 for an automobile accident

15

case. They report long stretches of time when the respondent did not communicate with them, but their case was finally settled for $15,000 in April 2017. Thereafter, the respondent did not give them their share of the settlement money and did not adequately communicate with them. According to the charges, the respondent's former employee, Ms. Flora, says she was fired by the respondent for asking questions about this case. According to the Statement of Charges, the respondent initially said that the delay in giving the clients their money was due to subrogation claims, but Ms. Flora says she later learned this was untrue and the money "was gone." The respondent did not timely respond to this ethics complaint, but he eventually told the ODC in November 2018 that there were outstanding bills that needed to be paid on his clients' behalf. According to the Statement of Charges, the respondent conceded that nobody had been working on these bills/subrogation claims since his ex-wife quit working for his law office, and he estimated that the amount of settlement remaining was around $9,000. According to the Statement of Charges, the respondent's client trust account had a negative balance at the time, and the respondent admitted he was unaware of the trust account balance and did not check the bank statements. After these clients filed an ethics complaint with the ODC, the respondent sent them a check for $7,000 on September 12, 2019 for their settlement. The respondent is charged with failing to act competently and diligently; failing to communicate with his clients; failing to hold client funds in a trust account; failing to keep complete records of the funds paid to him; failing to ensure that his staff's conduct was compatible with his ethical obligations; providing false information during the ethics investigation; and misappropriating funds belonging to his client or a third party. The Rules that he is alleged

16

to have violated are 1.1, 1.3, 1.4(a), 1.4(b), 1.15(a), 5.3, 8.1(a), 8.4(c) and 8.4(d) of the RPC. In his Answer, the respondent explains that his ex-wife was working on negotiating the subrogation claims until she left employment with his law office on August 17, 2017. As of the date that he filed his Answer to the Statement of Charges, November 5, 2019, the subrogation claims had not yet been resolved, but the respondent said that he was working to resolve them. The respondent asserts that Ms. Flora's employment was terminated for other reasons. He denies any unethical conduct.

**Count 20.** Client P.B. reports paying the respondent's employee a $3,500 retainer for the firm to represent him in a divorce case and a domestic violence protective order matter. According to the Statement of Charges, the respondent recalls receiving $1,500 from this client, but not $3,500, and there is no record of any payments being deposited. The respondent did not file the divorce case and could not provide an accounting of how the retainer money was spent. The respondent is charged with failing to act diligently; failing to expedite the litigation; failing to have a written fee agreement with his client; failing to hold client funds in a trust account; failing to provide a refund of unearned fees and expenses; and failing to ensure that his staff's conduct was compatible with his ethical obligations. He is accused of violating Rules 1.3, 3.2, 1.5(b), 1.15(a), 1.15(c), 1.16(d), and 5.3 of the RPC. In his Answer, the respondent says that many of P.B.'s communications were with former paralegal Mr. Coles, and that the evidence will show that Mr. Coles stole P.B.'s fee payments. The respondent denies that he committed any unethical conduct in this matter.

17

**Count 21.** The respondent was court-appointed to represent Brandon Perdue in a criminal case. According to the Statement of Charges, the respondent failed to appear for a hearing, the client was unable to reach him by phone, the respondent did not respond to the client's letters, and the respondent did not act when his client's letters were forwarded to him by the circuit court. After seven months, the circuit court appointed new counsel for Mr. Perdue. The respondent is charged with failing to act competently, failing to act diligently, failing to communicate with his client, and failing to expedite the litigation. The Rules that he is alleged to have violated are Rules 1.1, 1.3, 1.4(a), 1.4(b), and 3.2 of the RPC. In his Answer, the respondent says that he appeared for hearings in the case, but was not given notice of one or more other hearings. He reports finding a "few handwritten letters" from the client in his file, but does not recall seeing those letters when they were received. He explains that prior to May 2019, there were times when no employees were in his office and his own health limited his ability to go into the office. He denies committing any unethical conduct.

**Count 22.** According to the Statement of Charges, Zana Osborne was in a car accident resulting in injuries and thereafter met with the respondent's paralegal. Without ever revealing that he was not an attorney, the paralegal told Ms. Osborne that she had a valid case and he accepted her paperwork. The respondent reports that he is unable to locate this paperwork. The respondent is charged with failing to ensure that his staff's conduct was compatible with his ethical obligations, in violation of Rule 5.3 of the RPC.

18

In his Answer the respondent explains that he does not know Ms. Osborne, and he has been unable to find any files relating to Ms. Osborne. He denies any unethical conduct.

By notice dated October 1, 2019, the Clerk of this Court provided the respondent with written notice of the ODC's petition for his immediate suspension. Thereafter, the respondent requested a hearing before this Court. After full briefing and oral argument, the petition is now ripe for decision.

## II. Standard of Review

"The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals." Syl. Pt. 1, *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982). Pursuant to this authority, and in order to insure that the public is protected, this Court may immediately suspend a lawyer from the practice of law:

> Under the authority of the Supreme Court of Appeal's inherent power to supervise, regulate and control the practice of law in this State, the Supreme Court of Appeals may suspend the license of a lawyer or may order such other actions as it deems appropriate, after providing the lawyer with notice and an opportunity to be heard, when there is evidence that a lawyer (1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) poses a substantial threat of irreparable harm to the public until the underlying disciplinary proceeding has been resolved.

Syl. Pt. 2, *Committee on Legal Ethics v. Ikner*, 190 W.Va. 433, 438 S.E.2d 613 (1993). This authority has been incorporated into RLDP 3.27, which "provides a mechanism to

19

immediately suspend the license of a lawyer who (1) is disabled or is accused of violating the *West Virginia Rules of Professional Conduct* and (2) who is alleged to pose a substantial threat of irreparable harm to the public." *Office of Disciplinary Counsel v. Albers*, 214 W.Va. 11, 13, 585 S.E.2d 11, 13 (2003).[4]

---

[4] RLDP 3.27, titled "Extraordinary Proceedings," provides:

> (a) Upon receipt of sufficient evidence demonstrating that a lawyer (1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) poses a substantial threat of irreparable harm to the public, the Office of Disciplinary Counsel shall conduct an immediate investigation.
>
> (b) Upon completion of such investigation, the Office of Disciplinary Counsel shall promptly file a report with the Supreme Court of Appeals indicating whether, in the opinion of Disciplinary Counsel, the lawyer's commission of a violation of the Rules of Professional Conduct or disability poses a substantial threat of irreparable harm to the public. The Office of Disciplinary Counsel shall attempt to provide reasonable notice to the lawyer prior to the filing of this report.
>
> (c) Upon receipt of this report, the Supreme Court, upon determining the existence of good cause, shall provide notice of the charges to the lawyer with the right to a hearing in not less than thirty days before the Court. The Supreme Court may appoint a trustee to protect the interest of the lawyer's clients during the pendency of these proceedings. After such hearing, the Supreme Court may temporarily suspend the lawyer or may order such other action as it deems appropriate until underlying disciplinary proceedings before the Lawyer Disciplinary Board have been completed.
>
> (d) Unless otherwise provided, interim suspension of a lawyer pursuant to this rule shall take effect immediately upon entry of the order by the Supreme Court. A hearing on formal charges against the suspended lawyer shall be conducted by a Hearing Panel Subcommittee, unless continued for good cause shown, within ninety days after the effective date of suspension.

To prevail under RLDP 3.27, the ODC's petition "should contain, at a minimum, specific allegations of the misconduct alleged. Where necessary to aid the Court in its resolution of the matter, the petition should also refer to supporting documentation and affidavits. The respondent lawyer should then offer supporting documents and affidavits to counter the petitioner's allegations." Syl. Pt. 2, in part, *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (1995). "The special procedures outlined in Rule 3.27 of the West Virginia Rules of Lawyer Disciplinary Procedure should only be utilized in the most extreme cases of lawyer misconduct." *Id.* at 630, 457 S.E.2d at 653, syl. pt. 1. Moreover, "[g]iven the practical difficulty of providing specific guidance on the instances where temporary suspension is appropriate, the Court will apply the two-part standard in West Virginia Rule of Lawyer Disciplinary Procedure 3.27 to each petition on a case-by-case basis." *Id.* at 630, 457 S.E.2d at 653, syl. pt. 4. Upon proceeding in accordance with RLDP 3.27, if the Court "concludes that the respondent lawyer should be temporarily suspended, it will so order." *Id.*, syl. pt. 3, in part.

Finally, our decision in this matter is guided by the principle that lawyer disciplinary proceedings are not designed merely to punish the lawyer, but are also for "the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys." *Ikner*, 190 W.Va. at 436, 438 S.E.2d at 616 (citation omitted) (granting immediate suspension of lawyer for protection of public); *accord* Syl. Pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987) (discussing purpose of lawyer discipline). With all of this in mind, we consider the parties' arguments.

21

## III. Discussion

The ODC contends that the two-part test of RLDP 3.27 is satisfied in this case: the respondent has violated the Rules of Professional Conduct and he poses a substantial threat of irreparable harm to the public. The respondent argues that neither part of the test is met.

The sheer number of ethics complaints pending against the respondent is astounding. Nonetheless, when considering this matter, we are mindful that we do not yet have a full evidentiary record or any findings of fact by a Hearing Panel Subcommittee of the Lawyer Disciplinary Board. We are not called upon to decide the merits of the ethics charges or what the ultimate outcome of those charges should be; rather, "we consider whether the ODC's allegations, along with its supporting documentation, produce sufficient evidence to initially demonstrate" that the respondent violated the Rules and poses a substantial threat of irreparable harm to the public. *See Office of Disciplinary Counsel v. Duffy*, 237 W.Va. 295, 299, 787 S.E.2d 566, 570 (2016). Accordingly, we focus our attention on the aspects of the Statement of Charges that are essentially uncontested or to which the respondent has failed to provide an adequate response. *See Office of Lawyer Disciplinary Counsel v. Nichols*, 212 W.Va. 318, 321, 570 S.E.2d 577, 580 (2002) (immediately suspending lawyer pursuant to RLDP 3.27 who did not submit evidence to refute allegations that he lied to clients); *Battistelli*, 193 W.Va. 629, 457 S.E.2d 652 (immediately suspending lawyer pursuant to RLDP 3.27 who gave obviously false or deficient responses to multiple ethics complaints).

22

We begin with the issue of whether the respondent has violated the Rules of Professional Conduct. As described above, the respondent is accused of violating nineteen different Rules in twenty-two separate counts. There are multiple allegations of failing to act diligently, failing to adequately communicate with his clients, exhibiting a lack of candor and outright dishonesty, and failing to ensure that his employees acted in a manner consistent with the respondent's ethical obligations. For purposes of this petition, the allegations that are particularly worrisome to this Court are the claims that the respondent mishandled and misappropriated client money. As explained in *Lawyer Disciplinary Board v. Kupec*, 202 W.Va. 556, 568, 505 S.E.2d 619, 631 (1998), "[t]he misappropriation of client trust funds by an attorney is serious conduct." Misappropriation or conversion of money is "the unauthorized use of entrusted funds for the lawyer's own purpose. It includes temporary use. It also includes use that does not result in personal gain or benefit to the lawyer." *Id.* at 569, 505 S.E.2d at 632 (citation omitted).

Although he denies violating the Rules, it is clear from the limited record before us that the respondent has misappropriated client funds in at least some of the matters set forth in the Statement of Charges. For example, Count 2 alleges that the respondent received an $8,000 retainer, yet he was never able to produce an accounting of how he spent any part of the money, and he admitted owing the client a refund of approximately $6,000. Despite admitting that he owed this refund, the unearned fee was not in his client trust account—and the account had a negative balance during the relevant time period. In Count 4, the respondent is alleged to have received a $3,500 retainer, but

23

there is no record that this money was ever deposited into his client trust account. The respondent could not directly respond to the allegations of mishandling client funds in Count 4 because, according to the respondent, he has been unable to find records necessary to provide his client with an itemization of how the retainer was spent. In Count 15 the respondent settled a case and deposited the proceeds in his client trust account, but when he paid the client her share of the settlement, this caused the trust account to have a negative balance. Clearly, this client's funds had been diverted to another purpose. Turning to Count 19, the respondent settled his clients' case for $15,000 in April 2017 but admits that he did not provide any portion of the settlement proceeds to the clients until September 2019, when he sent them a check for $7,000 representing some of their share. During the interim period, his trust account had a negative balance. These are but a few examples of the financial improprieties convincingly set forth in the ODC's petition for immediate suspension and in the Statement of Charges.

The respondent states that his former paralegal, Mr. Coles, embezzled money from both his clients and his law firm. While this may be true, we reject it as a defense to this petition for immediate suspension. The ODC reports that there is evidence the respondent knew of Mr. Cole's criminal past yet still delegated critical office functions and responsibilities to him. Moreover, the respondent provided this Court with a copy of a police statement where he reported Mr. Coles to the police in January 2018—yet, even after that date, the respondent failed to review the bank statements for his client trust account. He apparently only became aware of the negative balance in the account during

24

his sworn statement given to the ODC in November 2018. The respondent also states that medical conditions prevented him from going into the office for several months. However, according to the brief he filed with this Court, as well as his Answer to the Statement of Charges, he did not begin missing work for health reasons until November 2017. The bank statement submitted by the ODC shows that his client trust account had a negative balance well before that timeframe.

Having reviewed this matter, it is clear that the ODC has made an initial showing that the respondent violated the Rules of Professional Conduct. Instead of maintaining money belonging to his clients in an appropriate trust account, this money was misappropriated for other purposes. A lawyer's act of converting the money of other people "obviously reflects a dishonest and deceitful nature which violates the general precept that an attorney should avoid dishonesty or deceitful conduct." Syl. Pt. 3, in part, *Committee on Legal Ethics v. Hess*, 186 W.Va. 514, 413 S.E.2d 169 (1991). The seriousness of the act of misappropriating client money is demonstrated by the fact that "[m]ost courts proceed from the general rule that absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." *Kupec*, 202 W.Va. at 569, 505 S.E.2d at 632 (citations omitted).

Turning to the second part of the RLDP 3.27 test, the ODC contends that the respondent presents a substantial threat of irreparable harm to the public. We agree. The twenty-two counts demonstrate a pattern of failing to ensure that his clients' interests are

25

protected, failing to pursue his clients' cases, failing to communicate with clients, dishonesty, and acts of misappropriation of funds. Moreover, according to the Statement of Charges and the representation of Disciplinary Counsel during oral argument, the respondent is still working on court-appointed criminal cases but is not submitting vouchers to the PDS for reimbursement. The ODC is unable to discern a source of income from which the respondent will be able to pay his debts, thus putting the retainers paid by other clients at risk.

Based upon all of the above, we conclude that there is sufficient evidence to grant the ODC's petition. Because of the "enormous amount of trust that the public places in its lawyers, this Court must ensure that the public's interests are protected and that the integrity of the legal professional is maintained." *Albers*, 214 W.Va. at 13, 585 S.E.2d at 13. For the protection of the public, we are compelled to immediately suspend the respondent from the practice of law in West Virginia pending the outcome of the Statement of Charges.

Because of the extraordinary nature of this matter, where we are granting the ODC's request to suspend a lawyer before the proceedings on formal charges have been completed, it is necessary for the Lawyer Disciplinary Board to expedite its consideration of the charges. This Court held the following in *Battistelli*:

> If the Court, after proceeding in accordance with West Virginia Rule of Lawyer Disciplinary Procedure 3.27(c), concludes that the respondent lawyer should be temporarily

26

suspended, it will so order. The Office of Disciplinary Counsel, however, must then expedite the resolution of the charges against the respondent and move to conclude the matter within ninety days after the suspension becomes effective.

193 W.Va. at 630, 457 S.E.2d at 653, syl. pt. 3. Moreover, RLDP 3.27(d) directs that when a lawyer is suspended pursuant to this Rule, a hearing on formal charges must be conducted within ninety days of the suspension.[5] However, the Statement of Charges against the respondent has been pending since September 30, 2019. During oral argument, the parties reported that a Hearing Panel Subcommittee of the Lawyer Disciplinary Board already held an evidentiary hearing on the charges in late January 2020. As such, we conclude that waiting an additional ninety days is too long. The Hearing Panel Subcommittee is ordered to file its final report on the pending Statement of Charges as soon as possible, but no later than sixty days after the date we file this opinion granting the immediate suspension.

Finally, there is a need to protect the respondent's current clients. Rule 3.27(c) of the RLDP specifies our authority to appoint a trustee during the pendency of extraordinary proceedings such as this. Furthermore, pursuant to RLDP 3.29, we may authorize the chief judge in the circuit in which a respondent lawyer maintains his practice to appoint a lawyer to serve as the trustee. RLDP 3.29 also specifies the duties of the trustee and makes provision for payment. Accordingly, we direct the chief judge of the Circuit

---

[5] *See supra* n. 4.

27

Court of Greenbrier County to appoint a lawyer to serve as the trustee of the respondent's law practice during the period of this interim suspension.

## IV.  Conclusion

For the foregoing reasons, the ODC's RLDP 3.27 petition is granted. We suspend the respondent's law license, effective immediately, until the pending Statement of Charges is decided by this Court. The Hearing Panel Subcommittee is directed to expedite its proceedings on the Statement of Charges and file its final report with this Court within sixty days of the date of this opinion. The chief judge of the Circuit Court of Greenbrier County is directed to appoint a lawyer to serve as the trustee for the respondent's law practice during the pendency of this suspension, in accordance with the provisions of RLDP 3.29. The Clerk of this Court is directed to issue the mandate forthwith.

Petition Granted, Immediate Suspension Ordered, Trustee to be Appointed

## APPENDIX

**Rule 1.1. Competence.**
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**Rule 1.3. Diligence.**
A lawyer shall act with reasonable diligence and promptness in representing a client.

**Rule 1.4. Communication.**
(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstances with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

## Rule 1.5. Fees.

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;

(2) the likelihood that the acceptances of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client in writing.

. . . .

## Rule 1.15. Safekeeping Property.

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Such separate accounts must comply with State Bar Administrative Rule 10 with regard to overdraft reporting. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property

shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

. . . .

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

. . . .

**Rule 1.16. Declining or Terminating Representation.**

. . . (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

**Rule 3.2. Expediting Litigation.**

A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client.

**Rule 3.3. Candor Toward the Tribunal.**

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . .

**Rule 5.3. Responsibilities Regarding Nonlawyer Assistance.**

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

### Rule 7.1. Communications Concerning a Lawyer's Services.

A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.

### Rule 7.5. Firm Names and Letterheads.

(a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1 . . . .

### Rule 8.1. Bar Admission and Disciplinary Matters.

A[] . . . lawyer in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from a[] . . . disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

### Rule 8.4. Misconduct.

It is professional misconduct for a lawyer to:

. . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]

(d) engage in conduct that is prejudicial to the administration of justice . . . .